FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2006 MAR 10 PM 12:34

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BARRY C. BLACKWELL,

Plaintiff,

v.

JOANNE B. BARNHART, Commissioner of Social Security,

Defendant.

Civil Action No. 04-620-KAJ

---

**MEMORANDUM OPINION**

---

Roy S. Shiels, Esq., Brown, Shiels, Beauregard & Chasanov, 108 E. Water Street, P.O. Drawer F, Dover, Delaware 19903; Counsel for Plaintiff.

David F. Chermol, Social Security Administration, Office of Regional Counsel, Region III, P.O. Box 41777, Philadelphia, Pennsylvania 19101; Counsel for Defendant.
Of counsel: Donna L. Calvert, Social Security Administration, Office of Regional Counsel, Region III, P.O. Box 41777, Philadelphia, Pennsylvania 19101.

---

Wilmington, Delaware
March 10, 2006



JORDAN, District Judge

## I. INTRODUCTION

Before me is a Motion for Summary Judgment (Docket Item ["D.I."] 15) filed by plaintiff Barry C. Blackwell ("Blackwell"), and a Motion for Summary Judgment (D.I. 18) filed by the defendant, Joanne B. Barnhart, Commissioner of Social Security (the "Commissioner"). Blackwell brings this motion under 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying him disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433. Jurisdiction is proper under 28 U.S.C. § 1331 and 42 U.S.C. § 405(g). For the reasons that follow, the Commissioner's Motion will be granted, and Blackwell's Motion will be denied.

## II. BACKGROUND

### A. Procedural Background

Blackwell applied for disability insurance benefits on March 20, 2002,[1] alleging that, due to a variety of ailments, he became unable to work on June 1, 1996.[2] (D.I. 8 at 97.) After the application was denied both initially and upon reconsideration (*id.* at 71-74), Blackwell requested a hearing before an administrative law judge ("ALJ") (*id.* at 79). At the hearing on May 23, 2003, Blackwell testified, and was represented by counsel. (*Id.* at 31-55.) Blackwell's brother, Samuel Blackwell, and a vocational expert also testified. (*Id.* at 55-60; *id.* at 60-66.) On August 20, 2004, the ALJ issued a

---

[1] It appears that Blackwell also filed for disability benefits on August 6, 2001, and appealed the denial of benefits. However, the Social Security Administration lost the paperwork he filed for his appeal (*see* D.I. 8 at 122), and the ALJ considered that claim merged with the one he filed on March 20, 2002. (*Id.* at 15.)

[2] Blackwell alleges that he became unable to work as a result of his illnesses prior to June 1, 1996, but that he continued to work, at least periodically, until that date. (D.I. 8 at 97.) Thus, Blackwell does not allege that he was disabled until June 1, 1996.

decision finding that Blackwell was not disabled within the meaning of the Act. (*Id.* at 15-21.)

Blackwell then requested review of the ALJ's decision by the Social Security Administration Appeals Council. (*Id.* at 9-11.) The Appeals Council "found no reason under [their] rules to review the ... decision." (*Id.* at 4-6.) Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. *See* 20 C.F.R. §§ 404.955, 404.981, 422.210; *see also Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) (noting that, if Appeals Council denies request for review, the ALJ's decision becomes Commissioner's final decision); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (same). Blackwell now seeks review by this Court under 42 U.S.C. § 405(g).

B. Facts

Blackwell was fifty-nine on the date of the ALJ's decision. (D.I. 8 at 16, 88.) He has a masters degree in education, and had worked as a school counselor and a therapist. (*Id.* at 37, 63, 103.) Blackwell alleges that he became disabled on June 1, 1996 as a result of hypertensive cardiovascular disease, cerebral vascular accident, congestive heart failure, pulmonary embolisms, and transient ischemic attack. (*Id.* at 97.)

For purposes of collecting disability insurance benefits, Blackwell was last insured on December 31, 1997. (*Id.* at 34, 91-92.) Blackwell must prove that, within the meaning of the Act, he became disabled before that date. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. 404.131(a). Thus, the relevant period here is

between June 1, 1996, which Blackwell pegs as the date that he became disabled, and December 31, 1997.

1. Medical Evidence

Blackwell appears to have suffered from various medical issues during the 1980s and early 1990s, which he alleges caused him to become disabled during the relevant period. First, Blackwell appears to have suffered from a cerebral vascular accident ("CVA")[3] in 1989 that gave him left-sided weakness, and various other symptoms. (*See* D.I. 8 at 181.) Blackwell also notes his history of pulmonary embolism from 1980. (*Id.* at 126-32.) Additionally, Blackwell appears to have suffered in 1999 and 2000 from colon problems, including diverticulitis and a bleeding colon. (*See infra* at 6.)

The earliest medical records in the transcript document two hospital stays in the fall of 1980, when Blackwell was diagnosed and treated for an acute pulmonary embolism and first degree AV block. (*Id.* at 126-32.) There are also notes from 1980 referring to a cardiac catheterization that Blackwell underwent in October of that year, and notes restricting when Blackwell could return to work. (*Id.* at 192-93.)

On April 13, 1989, Dr. Shala V. Mousavi noted that Blackwell had suffered from a CVA on January 30, 1989. (*Id.* at 181.) After his CVA in 1989, Blackwell was referred to physical therapy for rehabilitation to correct left-sided facial weakness and weakness in his left extremities. (*Id.* at 147, 180.) He began treatment at Tidewater Physical Therapy on June 8, 1989. (*Id.* at 133-45.) Blackwell was also seen by Dr.

---

[3] In lay terms, a CVA is commonly referred to as a stroke. (D.I. 8 at 181.)

Andrea Kahn, an opthomologist, on March 2, 1990, who examined the weakness in his left eye. (*Id.* at 149-52.)

Doctors notes from Dr. Mousavi and Dr. H. Paul Aguillon from 1987 through 1990 documenting Blackwell's condition, prescriptions from this period, and notes to Blackwell's employer from Dr. Aguillon and Dr. Mousavi are also present in the record. (*Id.* at 179-189, 192-93, 227-56.) Included in these records is a normal C.T. scan of Blackwell's head from February 10, 1989, and a stress test from January 18, 1989 which was "an essentially negative test for ischemia with adequate exercise tolerance." (*Id.* at 231, 233.) Additionally, a note by Dr. Mousavi from March 2, 1989, stated that Blackwell's "mild left sided weakness ... include[d] only the face and the left arm[,]" and that his facial weakness on the left side was reduced. (*Id.* at 228.)

In a note from July 15, 1993, Dr. Mousavi stated that Blackwell had been disabled since September 1, 1989 because of a stroke, and noted his "[p]revious history of cardiac disease with cardiac catheterization ... [and] pulmonary embolism." (*Id.* at 173, 305.) On August 16, 1993, October 14, 1993, and April 11, 1995, Dr. Mousavi submitted forms to the State of Delaware Board of Pension Trustees and Office of Pensions stating that, due to the myocardial infarction and pulmonary embolism, Blackwell suffered from "left-sided facial weakness, mild left hemiparesis and reduced visual field on the left." (*Id.* at 165, 167, 169.) Based on these symptoms, Dr. Mousavi opined that, because Blackwell suffered from a "cerebral vascular accident (stroke), myocardial infarction, pulmonary embolism, hypertension," Blackwell had been permanently disabled since June 30, 1990, and was "not physically able to perform the

duties of his/her position/former position." (*Id.* at 168; *see also id.* at 166, 170.) The Delaware State Board of Pensions, according to Blackwell, granted him a disability pension as a result. (*Id.* at 49.)

In a letter dated July 20, 1993, Dr. H. Paul Aguillon stated that Blackwell had been his patient since 1986 and that, as of his last office visit on October 30, 1990, Blackwell was diagnosed as suffering from "HCVD, CVA and CHF."[4] (*Id.* at 171-72.) Dr. Aguillon also submitted a form to the Delaware State Board of Pension Trustees on January 5, 1994, diagnosing Blackwell with "hypertensive cardiovascular disease," and stating that Blackwell was not physically able to perform his former job. (*Id.* at 190-91.) Blackwell appears to have visited Dr. Aguillon on December 13, 1994 and January 14, 1995 for refills of his prescriptions. (*Id.* at 275.) There then appears to be a significant time lapse in Blackwell's visits to Dr. Aguillon, with the next record entry, on the same page as the 1995 entries, being dated October 30, 2001. Blackwell, however, alleges that he continued to be treated by Dr. Aguillon in 1996 and 1997, and that there are no medical notes or records from this period because Dr. Aguillon was seeing him for free. (*Id.* at 49-54.) He further asserts that he was diagnosed with 'colonitis' in 1996 or 1997, but there is no medical evidence to substantiate that claim. (*Id.* at 49-54.)

Blackwell was admitted to the hospital in November of 1994 because of cardiac issues, although the reason for the admission and the reason that Blackwell was discharged are unclear from the record. (*Id.* at 218-26.) During that visit, Blackwell had

---

[4] HCVD, although not defined by Dr. Aguillon, was defined elsewhere as hypertensive cardiovascular disease. (*Id.* at 190-91.) CHF is not defined in the record, but, as nearly as I can tell, is used to mean congestive heart failure.

a normal stress test and an essentially normal electrocardiogram. (*Id.* at 218, 224-25.) Blackwell was later seen by Dr. Dewey A. Nelson on July 26, 1995 for a neurologic work-up. (*Id.* at 153-57.) Dr. Nelson found some weakness in the muscles on Blackwell's left side. (*Id.* at 155-56.) Dr. Nelson noted Blackwell's history of CVA and congestive heart failure, but also noted that Blackwell's records from November of 1994 showed no evidence of cardiac disease. (*Id.* at 156.) Dr. Nelson concluded that he would need the medical records concerning Blackwell's CVA from 1989, as well as an MRI of Blackwell's head and a psychiatric work-up, to complete his diagnosis and to "differentiate between the 'organic' and the 'psychogenic.'" (*Id.* at 156-57.)

There are no medical records in the transcript for the period between July of 1995 and March of 1999. In March of 1999, Blackwell underwent a sigmoid colectomy after being diagnosed with refractory diverticular disease of the sigmoid colon. (*Id.* at 158.) Additional records of follow-up visits and other medical records regarding his colon problems and procedures in 1999, 2000, and 2001 also appear in the administrative record. (*Id.* at 162-164; 195-216. 263-70.) Blackwell also appears to have had problems with his thyroid in 2001. (*Id.* at 276-77.) He visited Dr. Aguillon on October 30 and 31, November 20 and December 5, 2001 regarding those problems. (*Id.* at 273-75.)

On April 26, 2002, a physical residual functional capacity assessment was completed by a state physician, who found that Blackwell was minimally credible, based on "multiple documentation of misrepresentation and exaggeration of medical history." (*Id.* at 287.) Ultimately, she found that Blackwell's hernia would limit his lifting, and that

the "total of all medical conditions is ... light" residual functional capacity. (*Id.* at 287.) In making this assessment, the doctor carefully went through all of Blackwell's medical history, as documented by her listing each piece of Blackwell's medical history in her report. (*Id.* at 286, 288.)

The Delaware Disability Determination Service found, on April 26, 2002, that while Blackwell's "record does document limiting impairment due to recurrent hernia ... there is not sufficient evidence to indicate any functional limitations as of 1997." (*Id.* at 289-90.) The adjudicator who complied this report also examined much of Blackwell's medical history. (*Id.* at 290.) Additionally, a psychiatric report from April 30, 2002 found that Blackwell's medical history did "not support a disabling mental condition." (*Id.* at 291-303.)

Dr. Aguillon submitted another letter on May 15, 2003, referencing Dr. Mousavi's statement from July 15, 1993, stating that, "[b]ased on what Mr. Blackwell has told me, he has been totally disabled from 1993 until now." (*Id.* at 306.) Dr. Aguillon also filed an "Ability to do Work-Related Activities" form on May 8, 2003, stating that Blackwell could lift or carry less than ten pounds, could stand or walk for less than two hours in an eight hour workday, could sit for less than six hours in an eight hour workday, and was limited in pushing or pulling in both his upper and lower extremities. (*Id.* at 307-08.) As medical support for his conclusions, Dr. Aguillon cited Blackwell's 1989 cardiovascular accident and subsequent paralysis, his "history of [myocardial infarctions and] clots in his lung", as well as his issues in 1999 with diverticulitis, bleeding colon, and hernias. (*Id.* at 308.) Dr. Aguillon also found that Blackwell was limited in reaching, handling,

fingering and feeling, as well as seeing and speaking, because of these medical conditions. (*Id.* at 309.)

Finally, Blackwell submitted pictures of the bulge in his stomach, which he asserts were caused by his hernia and subsequent operations. (*See id.* at 270,311.) It appears from the record that Blackwell is requesting disability benefits in order to pay for surgery at Johns Hopkins Hospital to correct damage done in three earlier surgeries on his colon. (*See* D.I. 8 at 54, 311.)

2. The ALJ's Decision

To determine whether a claimant is entitled to social security disability benefits, an ALJ applies a sequential five-step inquiry pursuant to 20 C.F.R. § 404.1520. *See Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir.2000) (establishing five steps); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir.1986) (same).

> Under that five step analysis, the [ALJ] determines first whether an individual is currently engaged in substantial gainful activity. If that individual is engaged in substantial gainful activity, he will be found not disabled regardless of the medical findings. If an individual is found not to be engaged in substantial gainful activity, the [ALJ] will determine whether the medical evidence indicates that the claimant suffers from a severe impairment. If the [ALJ] determines that the claimant suffers from a severe impairment, the [ALJ] will next determine whether the impairment meets or equals a list of impairments in Appendix 1 of sub-part P of Regulations No. 4 of the Code of Regulations. If the individual meets or equals the list of impairments, the claimant will be found disabled. If he does not, the [ALJ] must determine if the individual is capable of performing his past relevant work considering his severe impairment. If the [ALJ] determines that the individual is not capable of performing his past relevant work, then she must determine whether, considering the claimant's age, education, past work experience and residual functional capacity, he is capable of performing other work which exists in the national economy.

*Brewster*, 786 F.2d at 583-84 (internal citations omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

In undertaking this five-step analysis, the ALJ determined that Blackwell is not disabled as defined in the Act. (D.I. 8 at 21.) After determining that Blackwell had not engaged in substantial gainful activity since the alleged onset date of his disability, the ALJ found that, prior to December 31, 1997, Blackwell "was status post left-sided cerebrovascular accident, with mild left sided facial and left arm numbness and weakness, but with a normal gait and normal mental status," and that Blackwell's impairments were therefore severe. (*Id.* at 16-18.) However, the ALJ found that these impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1 of Subpart P of Regulations No. 4. (*Id.* at 18.) Thus, pursuant to steps four and five of the required analysis, the ALJ had to determine whether Blackwell retained the residual functional capacity to perform either his past relevant work or other work existing in significant numbers in the national economy. (*Id.* at 18-20.) In making that determination, the ALJ considered all of Blackwell's symptoms, his medical reports, the opinions of his doctors, the opinions of the state agency consultants, and the opinion of the vocational expert. (*Id.*)

After reviewing all of the medical evidence and the testimony of the vocational expert, the ALJ found that Blackwell had "the following residual functional capacity: [Blackwell] is able to perform a wide range of sedentary to light exertional activities. The slight reduction in strength and sensation on [Blackwell's] left side never resulted in any significant reduction in the ability to walk or stand. Additionally lifting up to 10-20 pounds would certainly not be precluded... Certainly the ability to sit would not be

impacted at all." (*Id.* at 19-20.) Based on this determination, the ALJ found that Blackwell could return to his past relevant work as a school counselor and mental health clinic addictions therapist, jobs which are usually performed, according to the vocational expert, at sedentary exertional levels. (*Id.* at 20.)

## III. STANDARD OF REVIEW

Judicial review of the denial of an application for Social Security benefits is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *see Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.1999) (defining "substantial evidence"). Substantial evidence is "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## IV. DISCUSSION

Blackwell asserts that the ALJ's findings are not supported by substantial evidence for four reasons. (D.I. 16 at 5-12.) First, Blackwell argues that the ALJ did not give proper weight to the disability opinions of Drs. Mousavi and Aguillon. (*Id.* at 5-8.) Blackwell next argues that the ALJ impermissibly ignored the opinion of an agency of the State of Delaware, which had granted Blackwell a disability pension. (*Id.* at 9.) Third, Blackwell asserts that the ALJ did not give proper weight to his subjective complaints of pain and inability to concentrate. (*Id.* at 10-11.) Finally, Blackwell claims that the ALJ erred by not giving proper weight to the opinion of the vocational expert

that there was no work for him when non-exertional factors were considered. (*Id.* at 12.) I address each of these arguments in turn.

I note at the outset that there is no medical evidence from prior to December 31, 1997, which is the last date on which Blackwell was insured for disability benefits, regarding Blackwell's problems with his colon and his thyroid. Thus issues related to those conditions cannot be considered here, despite Blackwell's subjective complaints. *See* 42 U.S.C. § 423(d)(3); Social Security Ruling 96-4p, 1996 WL 374187, at *1-2 (1996). Furthermore, I note that, for the period between June 1, 1996, when he alleges he became disabled, and December 31, 1997, there is no medical evidence in the record reflecting any doctors appointments or treatment for any of the medical problems from which Blackwell alleges he has suffered.

A. <u>Disability Opinions of Dr. Mousavi and Dr. Aguillon</u>

Blackwell asserts that the ALJ erred in rejecting the disability opinions of Drs. Mousavi and Aguillon, as he argues that these opinions "should [have] be[en] given great weight." (D.I. 16 at 5.) Medical opinions of treating sources that "reflect judgments about the nature and severity of [a claimant's] impairment(s), including ... symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions" are entitled to "special significance." Social Security Ruling 96-5p, 1996 WL 374183, at *2 (1996). However, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus

would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Id.* Issues that are reserved for the Commissioner include "[w]hat an individual's RFC [residual functional capacity] is; ... Whether an individual's RFC prevents him or her from doing past relevant work; ... and ... Whether an individual is 'disabled' under the Act." *Id.* Therefore, although the medical opinions of Drs. Aguillon and Mousavi are entitled to special significance, their statements that Blackwell was disabled are not.

There is no evidence that either Dr. Aguillon or Dr. Mousavi saw Blackwell during 1996 and 1997. In fact, Dr. Aguillon's opinion consists only of a note from May 15, 2003 and a medical source statement about Blackwell's ability to do work-related activities. (D.I. 8 at 306-09.) The May 15, 2003 note stated that "Blackwell was totally disabled and unable to work in 1993, according to Dr. Mousavi['s] ... statement on July 15, 1993." (D.I. 8 at 306.) Dr. Aguillon went on to state that "[b]ased on what Mr. Blackwell has told me, he has been totally disabled from 1993 until now." (*Id.*) In the medical source statement, Dr. Aguillon opined that Blackwell was significantly limited in the amount of time he could work during the day, and in the functions he could perform. (*See id.* at 307-09; *see also supra* at 7.) However, Dr. Aguillon appears to have based his assessment on medical records from before 1996 and after 1997, the relevant period in which Blackwell was allegedly disabled,[5] and on Blackwell's own statements, and not on medical evidence from the relevant period. (*See* D.I. 8 at 306-09.)

---

[5] Again, Blackwell does not allege that he became disabled until June 1, 1996 (D.I. 8 at 97; *see also supra* at n.2), and he was last insured for disability purposes on December 31, 1997 (*id.* at 34, 91-92). Thus, Blackwell must show that he was disabled during this period to show that he is entitled to disability benefits.

A severe impairment "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Such an impairment cannot be demonstrated by a showing of symptoms alone. *See* Social Security Ruling 96-4p, 1996 WL 374187, at *1-2 (1996) ("under no circumstances may the existence of an impairment be established on the basis of symptoms alone ... medical signs and laboratory findings" are required); *see also Jones v. Commissioner of Social Sec.*, 48 Fed. Appx. 369, 370, 2002 WL 31018818, at *1 (3d Cir. 2002) ("Subjective symptoms, without more, cannot ordinarily result in a disability finding."). Additionally, a medical source opinion is entitled to weight only to the extent to which it is supported by medical evidence. 20 C.F.R. § 404.1527 (d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.") There was no objective medical evidence from 1996 or 1997 to support Dr. Aguillon's assessment. Instead, Dr. Aguillon's assessment was based on what Blackwell told Dr. Aguillon about his condition during those years. Thus, the ALJ was entitled to give Dr. Aguillon's opinion little weight in his ultimate determination. Furthermore, the ALJ did consider Dr. Aguillon's opinion in making his decision, but rejected Dr. Aguillon's ultimate conclusion that Blackwell was disabled, a decision which is reserved for the Commissioner. *See* Social Security Ruling 96-5p, 1996 WL 374183, at *2 . Thus, the ALJ did not improperly reject the opinion of Dr. Aguillon.

Blackwell also argues that the ALJ improperly rejected the opinion of Dr. Mousavi. Blackwell asserts that the ALJ did not give proper weight to the reports that Dr. Mousavi completed for the State of Delaware Pension office, which indicated that Blackwell was totally disabled. (D.I. 16 at 6.) However, Dr. Mousavi's reports to the State of Delaware Pension office are dated August 16, 1993, October 14, 1993, and April 11, 1995. (D.I. 8 at 166, 168, 170.) Blackwell does not allege that he became disabled until June 1, 1996, and in fact, Blackwell worked for over a year between December of 1994 and June of 1996 as a therapist. (*Id.* at 92, 96.) Thus, Dr. Mousavi's reports from prior to June 1, 1996 are not entitled to significant weight in the ALJ's disability determination, as Dr. Mousavi opined that Blackwell was totally disabled and could not work at a time when Blackwell was actually still working. Additionally, the only other medical evidence from Dr. Mousavi indicating that Blackwell was disabled is his July 15, 1993 note indicating that Blackwell had been totally disabled since September 1, 1989. (*Id.* at 305.) Again, because this letter is from a date nearly three years before Blackwell alleges he became disabled, and because Blackwell actually worked as a therapist for over a year after it was written, it is of limited relevance to the ALJ's decision as to whether Blackwell was disabled between June 1, 1996 and December 31, 1997. Thus, the ALJ did not improperly reject the opinion of Dr. Mousavi.

Furthermore, Blackwell claims that the ALJ improperly relied on a "1994 chest examination by Dr. Smoot, ... a March 1989 evaluation note by Dr. Mousavi, and ... a January 1989 stress test by Dr. Simons" in rejecting the disability determinations of Drs. Mousavi and Aguillon. (D.I. 16 at 6.) In fact, Blackwell goes on to state that "factors

existing seven years before the appropriate disability period are barely relevant to conditions existing in 1996 and 1997." Blackwell is correct in asserting that medical records from significantly before the period in which he alleges he became disabled are 'barely relevant' to his disability case. However, there is no medical evidence in the record concerning any illness, treatment, or doctors' visits from the 1995 neurological work-up by Dr. Nelson until 1999, when Blackwell began treatment for colon problems. (*See supra* at 6.) Thus, the ALJ relied on the best evidence that existed in the record in making his determination on Blackwell's disability, and his decision to give less weight to the opinions of Drs. Aguillon and Mousavi is supported by the law and substantial evidence in the record.

B. Delaware Disability Determination

Blackwell next argues that the ALJ erred because he did not consider the finding of the State of Delaware Pension Office that Blackwell was entitled to disability benefits. (D.I. 16 at 9, citing *Burton v. Bowen*, 704 F. Supp. 599 (E.D. Pa. 1989); *Baca v. Shalala*, 907 F. Supp. 351 (D.N.M. 1995); *Chambliss v. Massanari*, 269 F.3d 500 (5th Cir. 2001).) However, the United States Court of Appeals for the Third Circuit has held that the Commissioner must give substantial weight to the opinion of a doctor hired by a state agency to determine whether a claimant is disabled, not to the state agency's ultimate determination. *Lewis v. Califano*, 616 F.2d 73, 76 (3d Cir. 1980) (finding that the plaintiff had submitted substantial evidence of her disability by submitting "the report of Dr. Clayton, who was hired by the Dauphin County Board of Assistance to determine whether claimant was disabled in regard to her obtaining welfare benefits. Dr. Clayton found that claimant 'cannot work.' This doctor made the finding for another government

agency, and his finding is entitled to substantial weight."); *see also Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979) (finding that where an "expert body made a determination of disability on less evidence than was submitted to the ALJ[,]" the ALJ's failure to consider that determination was error).

Here, the ALJ did consider the medical evidence submitted to the State of Delaware Pensions Office, in the form of the medical reports submitted to that office in 1993 and 1995 by Dr. Mousavi. (D.I. 8 at 17-18, 165-170.) The only other evidence in the record of Blackwell's receipt of a disability pension from the State of Delaware is Blackwell's own testimony. (*Id.* at 49.) Additionally, in a July 20, 1999 report to the Delaware Pensions Office, Dr. Smoot stated that Blackwell was "fully able to perform the duties of" his former position. (*Id.* at 163-64.) Furthermore, the ALJ properly relied on the lack of medical records for the relevant time period and the April 26, 2002 residual functional capacity assessment completed by a state physician, in finding that Blackwell was not disabled. (*Id.* at 19; 279-88.) Thus, the ALJ appropriately considered the findings of the state agency in making his decision that Blackwell was not disabled.

C. Subjective Complaints of Pain

Blackwell next claims that the ALJ erred because he failed to give proper weight to Blackwell's subjective complaints of pain. "[W]here medical evidence supports a claimant's complaints of pain, the complaints should be given 'great weight' and may not be disregarded unless there exists contrary medical evidence[.]" *Claussen v. Chater*, 950 F.Supp. 1287, 1297 (D.N.J. 1996). Here, there is no medical evidence

from 1996 or 1997 to support Blackwell's subjective complaints of pain. As was earlier noted, "[s]ubjective symptoms, without more, cannot ordinarily result in a disability finding." *Jones v. Commissioner of Social Sec.*, 48 Fed. Appx. 369, 370, 2002 WL 31018818, at *1 (3d Cir. 2002). The ALJ was therefore entitled to reject Blackwell's complaints of pain, when those complaints were not supported by medical evidence.

D. Vocational Expert's Opinion on Non-Exertional Factors

Finally, Blackwell asserts that the ALJ erred in failing to give weight to his non-exertional complaints, including forgetfulness and inability to concentrate, and the vocational expert's opinion regarding those complaints. Again, however, there was no medical evidence in the record to support those complaints. The vocational expert opined that, without considering those factors, Blackwell could return to his past relevant work as a counselor. (D.I. 8 at 64.) The vocational expert went on to state that, considering the "deficits in memory and concentration" that Blackwell testified to, Blackwell could not return to his past relevant work. (*Id.*) In his decision, the ALJ relied on the initial hypothetical, and thus did not credit Blackwell's complaints about memory and concentration, in making his decision that Blackwell was not disabled. However, the ALJ clearly considered such factors, as is evidenced by the hypothetical posed to the vocational expert. (*Id.* at 64-65.) Because there was no medical evidence in the record to support Blackwell's complaints of cognitive problems, and because "[s]ubjective symptoms, without more, cannot ordinarily result in a disability finding[,]" the ALJ's decision to discount those complaints was not error. *Jones*, 48 Fed. Appx. 369, 370.

E. The ALJ's Decision is Supported by Substantial Evidence

There is substantial evidence in the record to support the ALJ's determination that Blackwell is not disabled. In coming to that determination, the ALJ relied on what appears to be the most relevant medical evidence in the record. First, the ALJ relied on the fact that a C.T. scan of Blackwell's head was normal on February 10, 1989, about ten days after his CVA on January 30, 1989. (D.I. 8 at 231.) Additionally, on March 2, 1989, Dr. Mousavi noted that Blackwell was experiencing only minor weakness on his left side.[6] (*Id.* at 228.) Furthermore, the ALJ relied on a normal stress test from 1989 (*id.* at 233), a normal stress test from November of 1994 (*id.* at 224-25), and an essentially normal electrocardiogram from November of 1994 (*id.* at 218). Based on all of this evidence, and on his assessment that Blackwell's testimony was "somewhat exaggerated[,]" the ALJ rejected the medical opinions of Drs. Mousavi and Aguillon. (*Id.* at 19.)

Additionally, the ALJ was entitled to rely on the April 26, 2002 residual functional capacity assessment, in which a state physician found that Blackwell had the residual functional capacity for light work. (*Id.* at 287.) All of this evidence, taken together, is substantial evidence to support the ALJ's ultimate determination that Blackwell is not disabled. It also supports his decision not to give weight to the opinions of Drs. Aguillon and Mousavi. I am not unsympathetic to Blackwell's description of the pain he is in,

---

[6] Dr. Nelson's July 26, 1995 neurological examination found some weakness on the left side, but also noted that Blackwell's most recent hospital records, from November 29 and 30 of 1994, showed "no evidence of cardiac disease." (D.I. 8 at 155-56.) It does not appear that the ALJ relied on Dr. Nelson's examination, but it also supports the ALJ's finding that Blackwell was not disabled.

especially the pain that he claims to have as a result of his colon problems and his operations to correct those problems. However, the ALJ's decision that Blackwell was not disabled and retained the residual functional capacity to perform his past relevant work is supported by substantial evidence and I am bound to uphold it.

## V. CONCLUSION

Accordingly, the Commissioner's motion for summary judgment (D.I. 18) will be granted, and Blackwell's motion for summary judgment (D.I. 15) will be denied. An appropriate order will follow.